DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Lucas County Court of Common Pleas, following a jury trial, wherein defendant-appellant, Ricky Brown, was found guilty of burglary, in violation of R.C. 2911.12(A)(3).
On March 6, 2000, appellant was indicted along with co-defendant, Leslie D. Anderson, for the February 25, 2000 burglary which occurred at 1503 Nevada Street in Toledo, Lucas County, Ohio. Appellant entered a plea of not guilty.
The case proceeded to trial on April 4, 2000, and the following testimony was presented. Diane Sanchez testified that on the date of the burglary she was a resident at 1501 Nevada, the lower apartment of a two-story duplex. She testified that the street address of the upper apartment is 1503 Nevada, the site of the burglary.
On the morning of February 25, 1999, Sanchez testified that she heard noise coming from the basement while she was in her kitchen washing dishes. A short time later, Sanchez heard a noise from upstairs and called Melissa Campos, the resident at 1503 Nevada, at work. Campos indicated that no one had permission to be in the apartment and instructed Sanchez to call 9-1-1.
Sanchez testified that as she was dialing 9-1-1 she yelled: "Who's up there?" and heard "people running." She ran to the front of her apartment and saw two black men with dark hooded sweatshirts. She stated that they exited the front stairway one at a time and jumped over the porch railing. Sanchez testified that the men were carrying white bags.
On cross-examination, Sanchez conceded that she could not ascertain from the footsteps and creaking floor whether there was more than one individual upstairs. She further explained that she could not see the front stairway from her apartment.
The state presented two witnesses who observed the appellant and co-defendant Anderson as they traveled on foot from 1503 Nevada to Navarre Park where they were apprehended. Robert Steinfurth testified that he lived approximately one and one-half blocks from the burglary site. He stated that at approximately 9:45 a.m., on February 25, 1999, he observed a black male walking down the street who kept looking back over his shoulder. Steinfurth testified that approximately one minute later a second black male, who was also looking over his shoulder, passed by.
Steinfurth indicated that the males were carrying "a coat or a shirt or something" under their arms in a "big bundle." He further explained that it was not only a coat, that the bundle was too large. He testified that they were walking toward Navarre Park. A police cruiser drove by a few minutes later and Steinfurth flagged them down and described what he had seen.
Jack Simpson testified that he was walking in Navarre Park when he saw two black men walking on the trail. He then observed them ten to twelve feet off the trail by some bushes but did not notice if they were carrying anything.
Several Toledo police officers testified regarding the arrest of appellant and the subsequent investigation. Officer
Shirley Guardiola testified that she and her partner, Officer Tim Steedman, responded to a reported burglary at approximately 9:43 a.m. When the officers arrived at 1503 Nevada they proceeded up the front stairway and noticed that the door was open. Guardiola testified that it appeared that the apartment had been ransacked. She stated that she walked through the apartment and observed that the back door had been forced open.
Guardiola testified that they spoke with Sanchez, the downstairs neighbor, and learned which direction the suspects had gone. Guardiola was flagged down by Steinfurth who further aided them in tracking the suspects.
Guardiola testified that once they arrived at Navarre Park her partner proceeded on foot. Steedman reported by radio two individuals walking along the railroad tracks. Guardiola then drove around to Woodville Road and up to the railroad tracks. Officer Wallace pulled in behind her.
Guardiola testified that she and Wallace saw the suspects walking towards them. The officers detained them while the area was searched and property recovered. She testified that the appellant had on a green tee shirt and black jeans and that Anderson wore a tee shirt and blue jeans.
Guardiola's partner, Timothy Steedman, testified next. Once Steedman exited the police cruiser in pursuit of the suspects he encountered Jack Simpson. Simpson stated that he had seen the suspects and that they were acting "`funny.'"
Steedman testified that on the west side of the park there is a large hill and on the east side, railroad tracks. Steedman went up on the hill and, looking down into the park, saw the suspects walking along the railroad tracks. He followed the suspects' path.
Once the suspects were apprehended, Steedman and other officers on the scene began searching for the bundles they believed were hidden in an area overgrown with brush and debris. They found two bundles wrapped in sweatshirts, one was dark blue or black, approximately fifty feet from each other. The bundles contained property identified as stolen from 1503 Nevada.
Toledo Police Sergeant Michael McGillivray is the district supervisor for East Toledo, which includes Nevada Street. McGillivray testified that he arrived on the scene just after the suspects had been detained and proceeded to walk back along the railroad tracks. He discovered two or three women's rings with dolphins on them and a dolphin pendant. McGillivray also found a pair of black leather gloves that were dry, despite the fact that it had been raining and the ground was saturated, and still "formed in a bundle."
Toledo Police Officer Mario Wallace testified that he pulled in behind Officer Guardiola alongside the railroad tracks. He approached the suspects and asked their names and what they were doing. Wallace testified that they indicated they were walking to "grandma's" or "ma's" house.
Wallace testified that he began walking the "woodline" alongside the railroad tracks in search of the stolen property. He found the property after approximately one hour and after actually going up into the wooded area. Wallace first approached the bundle wrapped in a piece of black clothing. He testified that he pulled back the clothing slightly and discovered a VCR. He left the bundle for the detectives to search for fingerprints or other physical evidence. Wallace stated that he never approached the second bundle.
Toledo Police Detective William Goetz was called to collect and process all physical evidence found at 1503 Nevada and Navarre Park. Goetz testified that when he arrived at Navarre Park observed two sweatshirts in the brush which contained property.
Goetz then went to 1503 Nevada where he photographed the pry marks on the back door and dusted for fingerprints. He testified the he photographed all the property that was recovered.
Goetz also photographed and collected a shoe print made in the dust on the front stairway and photographed and made plaster casts of shoeprints in the mud on the right side of the duplex. He explained that because there was no debris in the shoeprints, he could deduce that they had been made very recently. Goetz further stated that he requested the shoes of both suspects. One pair was work boots and the other, athletic shoes.
No useable prints were found in the apartment. As to the shoe prints, Goetz testified that the tread pattern on the bottom of the work boots was similar to the dust prints taken from the stairway. The tread patterns of both the athletic shoes and work boots were similar to the impressions taken outside. Goetz further testified that the work boots belonged to Anderson and the athletic shoes were appellant's.
Toledo Police Department Senior Criminalist, Josh Franks, testified that he had compared the shoes and the plaster casts. He explained that he examined the size, detail and tread of the shoes and considered the fact that the shoes were at the same place at the same time. Franks testified that based on his professional opinion, appellant's and Anderson's shoes made the impressions at the crime scene.
The victim, Melissa Campos, testified that she did not know appellant or Anderson and had not given them permission to be in her apartment. She also identified the items stolen which included jewelry, a Sony Playstation and games, a telephone, a camcorder and a VCR. She also testified that her television had a plastic garbage bag over it which was not there when she left that morning.
The state's final witness was co-defendant Anderson. Anderson testified that he entered a plea of guilty and as part of the plea agreement with the state he would testify against appellant.
Anderson stated that he asked appellant to participate in the burglary and he agreed. He testified that he and appellant pried the back door open with a crowbar and proceeded to burglarize the apartment. The state then rested.
Appellant called three witnesses during his case. The first witness was Vanessa Brown, appellant's sister. Brown testified that on the morning of the burglary, appellant was asleep at her apartment. Brown stated that when Anderson came to the apartment, he told her that his girlfriend wanted he and appellant to move some things and that she would pay them.
Lucas County Deputy Sheriff Joseph Scroggs testified that he worked in the property room at the Lucas County Jail. He testified that appellant had on a pair of black pants, a gray belt, and a green sweatshirt at the time he was booked. On cross-examination, Scroggs further explained that he would have no way of knowing if there had been items removed from appellant at the time of his arrest.
Appellant was the last defense witness to testify. He denied involvement in the burglary and stated that Anderson had told him that his girlfriend had needed help moving and that appellant would be paid $50. Appellant testified that when they arrived at 1503 Nevada he was told to wait. A short time later, Anderson came running down the stairs with a bag of property; appellant stated that he also ran from the crime scene because he was on parole and realized that Anderson had just committed a crime. Appellant denied that he too had been carrying a bundle of property. He also denied stating to the officers that he was returning from his grandmother's house. Appellant indicated that he did not have a grandmother. The defense then rested.
On rebuttal, the state called Toledo Police Detective Timothy Kaminski who interviewed appellant following the burglary. Kaminski stated that appellant indicated to him that after burglarizing the apartment, Anderson had run down the back, not the front, stairs.
The state then recalled Officer Guardiola who recounted that appellant had stated that he was returning from his grandmother's house which was a great distance from where he was apprehended. On cross-examination, Guardiola was questioned as to why she previously testified that appellant was wearing a green tee shirt when, in fact, it was a sweatshirt. The evidence portion of the trial then concluded.
Following jury deliberations, appellant was found guilty of burglary and this appeal followed. Appellant now raises the following assignments of error:
"FIRST ASSIGNMENT OF ERROR
 "DEFENDANT-APPELLANT'S CONVICTION IS SUPPORTED BY INSUFFICIENT EVIDENCE AND IS THEREFORE A DENIAL OF DUE PROCESS.
 "SECOND ASSIGNMENT OF ERROR
 DEFENDANT-APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
In his first assignment of error, appellant argues that the evidence presented against him at trial was insufficient to support a conviction. Appellant specifically argues that the record is devoid of evidence that appellant trespassed in the premises located at 1503 Nevada.
In State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, the Supreme Court of Ohio set forth this court's standard of review as to the sufficiency of the evidence:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Citation omitted.)
In order to be convicted of burglary, under R.C. 2911.12(A)(3), the state was required to prove that appellant by force, stealth or deception (1) trespassed in an occupied structure (2) with the purpose to commit, in the structure, a criminal offense.
We shall now review whether the evidence presented at trial was sufficient to establish that appellant trespassed at 1503 Nevada. The trial testimony confirms that appellant, by his own admission, was at the Nevada Street property on February 25, 2000. Diane Sanchez testified that she heard "people" running in the upstairs apartment. She testified that Anderson and appellant jumped over the duplex's porch railing and were carrying bags as they walked away.
Steinfurth also testified that both Anderson and appellant were carrying bundles under their arms. Steinfurth stated that they kept looking over their shoulders and that he found their behavior to be suspicious. Simpson also indicated to Officer Steedman that when he saw appellant and Anderson in the park they were acting "`funny.'"
Anderson testified that he and appellant broke into the apartment at 1503 Nevada and that they both took property. Anderson stated that he had asked appellant to participate in the burglary and that appellant agreed.
Based on the foregoing, and upon viewing the evidence in a light most favorable to the prosecution, Jenks, supra, we find that the evidence presented was sufficient to support a conviction in this case. We further find that a rational trier of fact could have found the essential elements of burglary beyond a reasonable doubt. Id. Accordingly, appellant's first assignment of error is not well-taken.
In appellant's second assignment of error, he argues that the conviction is against the manifest weight of the evidence. In State v.Thompkins (1997), 78 Ohio St.3d 380, 386, the Ohio Supreme Court stated that the "legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." The court explained that while an appellate court may determine that a judgment is sustained by sufficient evidence, it may still conclude that the judgment is against the weight of the evidence. (Citation omitted.) Id. at 387.
In contrast to sufficiency, the court stated the following in regard to weight of the evidence:
 "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'" (Citation omitted.) (Emphasis in original.) Id. at 387.
The Ohio Supreme Court also noted that when an appellate court reverses a verdict as against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and "disagrees with the factfinder's resolution of the conflicting testimony." Id. In reviewing the entire record, an appellate court:
 "`weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
Upon review of all the evidence presented in this case, we cannot say that the jury lost its way and created a manifest miscarriage of justice. Appellant's conviction for burglary is not against the manifest weight of the evidence. Accordingly, appellant's second assignment of error is not well-taken.
On consideration whereof, we find that appellant was not prejudiced or prevented from having a fair trial, and the judgment of the Lucas County Court of Common Pleas is affirmed. The costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Melvin L. Resnick, J., James R. Sherck, J. CONCUR.